UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTINA KELLETT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-08-3081-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 17, 22.) Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Kathryn A. Miller represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Christina Kellett (Plaintiff) protectively filed for social security income (SSI) and disability insurance benefits (DIB) on December 6, 2004. (Tr. 80, 92, 453.) Plaintiff alleged an onset date of November 28, 2003, but later amended the alleged onset date to May 1, 2005. (Tr. 459.) Benefits were denied initially and on reconsideration. (Tr. 38, 41.) Plaintiff requested a hearing before

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

an administrative law judge (ALJ), which was held before ALJ R.J. Payne on July 18, 2007. (Tr. 458-86.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 468-85.) Medical expert Ronald Klein, Ph.D., also testified. (Tr. 460-67.) The ALJ denied benefits (Tr. 22-32) and the Appeals Council denied review. (Tr. 4.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

At the time of the first hearing, Plaintiff was 49 years old. (Tr. 468.) Plaintiff attended school through the eleventh grade, but did not graduate or obtain a GED. (Tr. 484.) She has been a carnival worker, cook and floral designer. (Tr. 469-70, 480-82.) She testified that she stopped working because she could not concentrate on her work, had hand tremors, and to qualify for medication benefits. (Tr. 261, 470.) Plaintiff says she suffers from idiopathic hypersomnia, a sleep disorder. (Tr. 472.) She testified she cannot hold a job because she is really tired and sleeps a lot. (Tr. 483.) She says she also has anxiety around other people and mild hand tremors as a side effect of medication. (Tr. 483.) Plaintiff has a history of substance abuse. (Tr. 15.) She testified that her last substance use was March 11, 2006. (Tr. 468.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination

is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of*

*Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities,

the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart*

*v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

If drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2005, the amended alleged onset date. (Tr. 25.) At step two, he found Plaintiff has the severe impairments of polysubstance

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

abuse/addiction disorders (primarily), with an affective (bipolar) disorder either secondary to or independent of the primary diagnosis. (Tr. 25.) At step three, the ALJ found Plaintiff's substance use disorder meets section listing 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 26.)

Because there is medical evidence of substance abuse, the ALJ then conducted the sequential evaluation process without the effects of substance use. The ALJ determined that if Plaintiff stopped the substance use, her remaining limitations would continue to have a severe impairment or combination of impairments. (Tr. 27.) The ALJ further found that if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 27.) Next, the ALJ determined:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform at all physical/exertional levels but with 'moderate' non-exertional mental capacity limitations in her ability to: sustain ordinary routine without special supervision; work in coordination with or in close proximity to others without distraction; interact appropriately with the public; and accept instructions and respond appropriately to criticism.

(Tr. 28.) At step four, the ALJ found Plaintiff maintains the functional capacity to return to/perform past relevant work. (Tr. 30.) After taking into account Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there would be a significant number of jobs in the national economy that the Plaintiff could perform, if Plaintiff stopped the substance use. (Tr. 31.) The ALJ then determined that Plaintiff's substance use disorder is a contributing factor material to the determination of disability. (Tr. 32.) Thus, the ALJ concluded Plaintiff has not been under a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

disability as defined in the Social Security Act at any time from the alleged onset date through the date of the decision. (Tr. 32.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts the ALJ erred by: (1) failing to account for all of Plaintiff's impairments in the RFC finding; (2) failing to conduct an adequate step four analysis; and (3) relying on the grid rules at step five despite the presence of non-exertional limitations. (Ct. Rec. 18 at 12-20.) Defendant argues: (1) the ALJ correctly determined Plaintiff's RFC; (2) Plaintiff failed to prove an inability to return to past relevant work; and (3) the ALJ's alternative finding at step five constitutes harmless error. (Ct. Rec. 14 at 7-10.)

**DISCUSSION**

**1.   Residual Functional Capacity**

   **a.   Sleep Disorder**

Plaintiff argues the evidence as a whole does not support the ALJ's assertion that Plaintiff's sleep problems resolved when she became clean and sober. (Ct. Rec. 18 at 12.) The ALJ cited treatment and progress notes from Plaintiff's treating providers as evidence that her hypersomnia and fatigue improved with medication and abstinence from illicit drug use. (Tr. 30.) Plaintiff counters the evidence cited by the ALJ with citations to office visit notes of Plaintiff's report of sleep problems. (Ct. Rec. 18 at 12-13.)

The ALJ cited Plaintiff's reports of improved mood and sleep in March, July, August and September 2006. (Tr. 272, 285, 287, 405-06, 432.) In March 2006, Plaintiff was compliant with her medications and had good sleep hygiene. (Tr. 30, 406.) Reports from November 2006

show Plaintiff reported complaints of hypersomnia and fatigue, but attributed this to side effects from medication. (Tr. 30, 274-76.) In January 2007, Plaintiff was exercising and reported improvement. (Tr. 26, 276-77.) The next month, Plaintiff was "doing fine and sleeping relatively well," and was "happy with her current medication regiment," although she continued to report twice monthly cycles of not sleeping for two days, then sleeping for two days. (Tr. 26, 279.)

In response to the evidence cited by the ALJ, Plaintiff points out notes from March and April 2006 reflecting Plaintiff reported she was having trouble sleeping. (Ct. Rec. 18 at 12; Tr. 380, 382, 389.) In June 2006, Dr. Jennings noted Plaintiff reported "she has had a great deal of difficulty with her sleep and has basically slept fairly little in the past three days." (Tr. 282.) Plaintiff notes that one of the reports cited by the ALJ as reflective of improved mood and sleep in August 2006 also indicates Plaintiff "awakens tired and feels like she has not slept." (Tr. 287.) Plaintiff cites notes from September, October and November 2006, which include additional reports of sleeping too much, drowsiness and lethargy. (Tr. 272-73, 275-76.) Additionally, Plaintiff notes a January 2007 report in which Dr. Jennings repeated the diagnosis of idiopathic hypersomnia and mentioned Plaintiff says she "sleeps the day away." (Tr. 278.) Based on the foregoing, Plaintiff argues that the ALJ's finding that Plaintiff's sleep problems resolved when she became clean and sober is unsupported by the record. (Ct. Rec. 18 at 13.)

It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). As noted above, the ALJ's determination that a plaintiff is not disabled are upheld if the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

findings of fact are supported by substantial evidence. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. "Substantial evidence" is evidence a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In evaluating the evidence, the court must look at the entire record and not just at the parts of the record that support the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750. When evidence is conflicting or inconclusive, the court must affirm the decision made by the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ is responsible for determining credibility and resolving conflicts in medical evidence. *Magallanes*, 881 F.2d at 750.

In addition to office visit notes, other evidence cited by the ALJ supports his findings. Dr. Jennings, Plaintiff's treating physician, noted a sleep study revealed Plaintiff does not have a diagnosis of breathing related sleep problems.[1] (Tr. 26, 277.) Dr.

---

[1] The sleep study is not part of the record, but Dr. Jennings reviewed it and recorded some of its findings. (Tr. 277.) According to Plaintiff, "Dr. Jennings reported that the polysonogram was normal, but that her MSLT the next day was abnormal. (Tr. 277.)" (Ct. Rec. 18 at 7.) Defendant correctly points out that this statement comes from page 276 of the record, where Dr. Jennings recorded Plaintiff's oral report of the results of the sleep study. Plaintiff also asserts Dr. Jennings "later reported that the sleep study 'proves that [c]lient

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

Jennings suspected Plaintiff's sleep problems were related or secondary to methamphetamine abuse. (Tr. 26, 277, 295.) Dr. Klein, the medical expert, testified that Plaintiff's substance abuse disorder is the prominent issue, and that "remaining sober is her real challenge." (Tr. 28, 462-63.) His affective disorder diagnosis took into account Plaintiff's sleep problems. (Tr. 308, 461.) Finally, the evidence cited by Plaintiff is based on Plaintiff's self-reports, which the ALJ determined to be less than credible, and Plaintiff does not challenge the credibility finding. (Tr. 30.)

The court concludes the ALJ cited more than a mere scintilla of evidence supporting his findings. Although the evidence may also suggest other conclusions, the ALJ's resolution of the conflicting evidence is adequately supported and as such, the RFC determination

---

has a sleep disorder (hypersomnia).' (Tr. 296)." (Ct. Rec. 18 at 7.) As Defendant notes, the source of information for a note dated January 3, 2004, on page 296 that, "Sleep study proves that client has a sleep disorder" is unclear. (Ct. Rec. 23 at 11-12.) Dr. Jennings' own handwritten and typed notes for the same date do not include such a statement. (Tr. 278, 295.) On the other hand, Defendant asserts Dr. Jennings concluded Plaintiff did not have a sleep disorder after reviewing the results of the sleep study. (Ct. Rec. 23 at 11.) However, Dr. Jennings stated, "she does not have a diagnosis of sleep related breathing problems." (Tr. 277.) He continued to diagnose idiopathic hypersomnia, despite the results of the sleep study, although he also indicated her hypersomnia was "likely secondary to chronic amphetamine usage." (Tr. 278.) Both Plaintiff and Defendant overstate Dr. Jennings' interpretation of the sleep study.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

must be affirmed. Virtually all of the evidence cited by Plaintiff is based on her own self-report. There is no objective evidence of a sleep disorder; in fact, the only objective evidence, a sleep study, revealed no abnormalities. No treating or examining physician concluded Plaintiff had a sleep disorder apart from the influence of drug and alcohol abuse.[2] Therefore, the ALJ's findings regarding Plaintiff's sleep problems are supported by substantial evidence in the record and the ALJ did not err by failing to include limitations specifically related to her sleep problems in the RFC finding.

**b. Obesity**

Plaintiff argues the ALJ failed to explain how obesity factored into his analysis or describe the effect obesity has on Plaintiff's employability. (Ct. Rec. 18 at 14-15.) The ALJ acknowledged that Plaintiff has been described as obese with a body mass index of 36, but did not conclude obesity is a severe impairment or include any

---

[2] Plaintiff argues that because Plaintiff maintained abstinence for nine months and continued to report difficulties sleeping, the cause of her sleep problems is irrelevant. (Ct. Rec. 18 at 14.) This argument misses the point. The ALJ made a legally sufficient presentation of the evidence indicating that Plaintiff's sleep problems are a symptom of her affective disorder. After considering the effects of substance abuse, the ALJ found Plaintiff's symptoms improved while she maintained abstinence and complied with prescription medications. There is little evidence, other than Plaintiff's self-report, of an ongoing sleep disorder independent from her drug addiction and affective disorder.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

functional limitations related to obesity in the RFC finding.  (Tr. 26, 324, 347, 350.)  When there is no evidence that a claimant's obesity limits her functioning, there is no error when the ALJ does not consider obesity in the sequential evaluation process.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).[3]  The ALJ is not required to discuss all of the evidence presented, but must explain why significant probative evidence has been rejected.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  In the case at hand, there is no evidence of any functional limitations created or exacerbated by Plaintiff's obesity.  Plaintiff has not demonstrated how her obesity suggests additional or enhanced limitations.  Indeed, as Defendant points out, Plaintiff made virtually no comment about her obesity at the hearing.  (Ct. Rec. 23 at 15; Tr. 480.)  Because there is no evidence that obesity impacts Plaintiff's functional limitations, evidence of obesity is not probative and the ALJ did not err by failing to discuss it in detail.

**2.   Past Relevant Work**

Plaintiff argues the ALJ failed to make proper findings about Plaintiff's ability to perform past relevant work.  If a claimant is able to perform his or her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  In

---

[3] In *Burch*, as in this case:

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning.  Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity.  The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition.  Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.

*Id.* at 683.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact:

1. A finding of fact as to the individual's RFC;
2. A finding of fact as to the physical and mental demands of the past job/occupation; and
3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

S.S.R. 82-62. The burden of proof lies with the Plaintiff at step four, but the ALJ still has a duty to make the requisite factual findings to support his conclusions. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); S.S.R. 82-62.

In finding that a claimant can return to past relevant work, the claimant must be able to perform:

1. The actual functional demands and job duties of a particular past relevant job; or
2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); S.S.R. 82-61. The plaintiff's past relevant work as performed may be defined by two sources: a properly completed vocational report or the plaintiff's own testimony. S.S.R. 82-61, S.S.R. 82-41. The plaintiff's past relevant work as generally performed is best defined by the *Dictionary of Occupational Titles*. *Pinto*, 249 F.3d at 845.

The ALJ made a specific finding of fact regarding Plaintiff's RFC, discussed above. The ALJ listed the limitations identified in the RFC finding and found Plaintiff could return to her past work as a floral designer or cook. (Tr. 31.) He noted both positions allow for someone to oversee Plaintiff and keep an eye on her work habits, without being designated sheltered work. (Tr. 31.) However, the ALJ neither consulted a vocational expert or mentioned the *Dictionary of*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

*Occupational Titles* regarding the demands of Plaintiff's past jobs, nor discussed Plaintiff's testimony about past relevant work.[4]  With respect to the physical and mental demands of Plaintiff's past relevant work, the ALJ stated, "This work does not require the performance of the work-related activities precluded by her residual functional capacity outlined above." (Tr. 30.)  This statement does not meet the requirement that the ALJ make a finding of fact as to the physical and mental demands of the past job or occupation.  Rather, the ALJ's finding is a finding that the RFC is consistent with past relevant work, without detailing the demands of the past work.

Plaintiff's ability to meet the demands of past relevant work is

---

[4] Plaintiff's testimony about past relevant work as actually performed is limited.  When the ALJ asked Plaintiff to describe the environment when she worked in the flower shop, Plaintiff said, "It wasn't really a nice environment.  I mean, I designed flowers.  I actually worked with the customers." (Tr. 469.)  After establishing that Plaintiff's mother was the owner of the flower shop and Plaintiff's sister was the manager, the ALJ asked whether Plaintiff ever received special help from her sister or her mother.  Plaintiff responded, "Well, if I didn't really focus on the flowers that well, then my sister would go in and fix them for me." (Tr. 471.) Plaintiff also testified that the job at the flower shop ended because, "I couldn't concentrate on my work.  And I had to get some medication from Comprehensive Mental Health.  And actually, what my hand was doing was tremors." (Tr. 470.)  The ALJ did not discuss any of this testimony, except to mention that Plaintiff testified she left her last job because she could not concentrate.  (Tr. 29.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

particularly important in this case because one of the RFC limitations is a moderate limitation in interacting appropriately with the public. (Tr. 28.) The *Dictionary of Occupational Titles* indicates that one of the duties of a floral designer is to confer with clients, and Plaintiff also testified that she worked with customers. (Tr. 469.) It is not clear from the record or the ALJ's decision that a moderate limitation in the ability to interact appropriately with the public is consistent with past relevant work, which appears to require contact with the public. As a result, the ALJ's past relevant work findings are inadequate, which constitutes legal error.

Plaintiff also argues the ALJ failed to consider whether Plaintiff's past work constitutes "past relevant work." (Ct. Rec. 18 at 17.) Plaintiff asserts and Defendant concedes it is not possible to determine from the record that Plaintiff's job as a cook was substantial gainful activity.[5] (Ct. Rec. 18 at 17; Ct. Rec. 23 at 19.) Plaintiff further argues Plaintiff's work as a floral designer "appears to have been a sheltered environment rather than competitive employment." (Ct. Rec. 18 at 18.) Defendant argues Plaintiff's work as a florist was substantial gainful activity because: (1) her mother

---

[5] Despite Plaintiff's testimony that she worked full-time as a cook for a year in 1993 to 1994, her earnings record suggests she did not perform substantial gainful activity. (Tr. 75, 481.) It is noted that Plaintiff's earnings record contains an administrative "alert" that the 1994 figures are possibly incomplete. (Tr. 78.) Nonetheless, the parties agree the record does not reflect substantial gainful activity from Plaintiff's work as a cook.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

thought "she always did a great job" until November 2003;[6] (2) her income level exceeded the base amount for a presumption of substantial gainful activity; (3) Plaintiff's mother terminated her at Plaintiff's request to make Plaintiff eligible for mental health benefits; and (4) Plaintiff's employer did not meet the definition of a sheltered workshop. (Ct. Rec. 23 at 18-19.)

The regulations discuss how general information about work activity is considered. 20 C.F.R. §§ 404.1573, 416.973. The regulations state:

> We consider how well you do your work when we determine whether or not you are doing substantial gainful activity. If you do your work satisfactorily, this may show that you are working at the substantial gainful activity level. If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level.

*Id.* at §§ 404.1573(b), 416.973(b). The regulations further state that if work is done under special conditions, it may or may not reflect the necessary skills and ability to work at the substantial gainful activity level. *Id.* at §§ 404.1573(c), 416.973(c). Plaintiff cites her own statement that she missed a lot of work and her mother and sister helped her perform job duties as evidence that her job as a floral designer was "sheltered work." (Ct. Rec. 18 at 18; Tr. 86, 471.) The court need not determine whether Plaintiff's work as a florist was sheltered work because the ALJ erred elsewhere in the step four analysis. However, on remand, the ALJ should make a

---

[6] The ALJ noted that Plaintiff was hospitalized for "emotional liability" in November 2003, which was later attributed to methamphetamine use. (Tr. 25, 170, 172, 223.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

determination as to whether Plaintiff's past work as a floral designer was sheltered work.

**3.   Step Five**

The ALJ made an alternative step five finding that a significant number of jobs exist in the national economy which Plaintiff could perform.  (Tr. 31.)  Plaintiff argues the step five finding is defective because the ALJ failed to call a vocational expert, despite Plaintiff's significant nonexertional limitations.  (Ct. Rec. 18 at 15.)  Defendant argues the ALJ's failure to call a vocational expert at step five is harmless error.  (Ct. Rec. 18 at 15; Ct. Rec. 23 at 23-24.)

At step five, the Commissioner bears the burden of showing there is other work existing in significant numbers in the national economy that the claimant can perform, taking into account the claimant's residual functional capacity, age, education and work experience.  20 C.F.R. § 404.1560(b)(3).  There are two ways for the Commissioner to show there is other work existing in significant numbers in the national economy that claimant can perform:  (a) by the testimony of a vocational expert; or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids"). *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The grids should be applied only when a claimant's limitations fall into a standardized pattern which is "accurately and completely" described by the grids.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006); *Tackett*, 180 F.3d at 1103.  Significant nonexertional limitations make reliance on the grids inappropriate.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Serv.*, 846 F.2d 573, 577 (9th Cir. 1988).  A

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

nonexertional impairment is an impairment that limits a claimant's ability to work without affecting her strength. *Bruton*, 268 F.3d at 828.

In this case, the ALJ noted that Plaintiff's ability to perform work at all exertional levels is compromised by some nonexertional mental limitations. (Tr. 32.) However, the ALJ neither explained how the four moderate nonexertional limitations assessed are not "significant" nonexertional limitations making reliance on the grids inappropriate, nor described how the grids "accurately and completely" describe Plaintiff's degree of disability in light of her nonexertional limitations. The ALJ emphasizes that the medical expert, Dr. Klein, indicated that Plaintiff's problems are "amenable to accommodation." (Tr. 32, 321, 463.) Notwithstanding the fact that Dr. Klein is not a vocational expert, his comment does little to establish the proper basis for a step five finding. Thus, the step five finding is inadequately supported. The error is not harmless, as Defendant urges, because the step four finding is also erroneous.[7]

---

[7] Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). In this case, the errors at step four and step five are critical to the disability determination.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 19

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. On remand, the ALJ should make a new step four finding, including a finding about the nature and demands of Plaintiff's past relevant work. If necessary, the ALJ shall make a new step five finding and call a vocational expert if appropriate. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 22)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED November 3, 2009.

                S/ CYNTHIA IMBROGNO
             UNITED STATES MAGISTRATE JUDGE